UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:13 CR 79 |
| | ) | |
| JON ERIK LILLY | ) | |

**OPINION and ORDER**

This matter is before the court on defendant Jon Lilly's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c) and Section 603 of the First Step Act. (DE # 41.) For the reasons that follow, the motion will be denied.

**I.      BACKGROUND**

In September 2013, following his guilty plea, Lilly was sentenced to a 144-month term of imprisonment, to be followed by a 10-year term of supervised release, for receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). (DE # 27.) Lilly is currently incarcerated at FCI Forrest City Low, in Forrest City, Arkansas. Lilly is 35 years old and has a projected release date of July 14, 2023. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Sept. 30, 2020).

On June 26, 2020, Lilly filed a motion for early release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (DE # 41.) Lilly claims that his asthma and severe allergies,[1] combined with the outbreak of COVID-19 at his prison, place him at higher risk of serious illness were he to contract COVID-19, and this risk constitutes an extraordinary

---

[1] Lilly also claims that he was tested for Cistic Fibrosis as a child, but does not allege that he has been diagnosed with the condition.

and compelling reason justifying his early release from prison. (DE # 60.)[2]

Pursuant to this court's General Order 2020-11, the undersigned referred Lilly's motion to the Northern District of Indiana Federal Community Defenders (FCD) to determine whether Lilly may be eligible for a reduction in sentence in accordance with Section 603 of the First Step Act. (DE # 43.) After reviewing Lilly's case, the FCD filed a notice of non-representation, stating that they would be unable to assist Lilly. (DE # 48.) The Government opposes Lilly's request for compassionate release. (DE # 51.) Lilly filed a reply in support of his motion. (DE # 52.) This matter is now ripe for ruling.

## II. ANALYSIS

Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant a convicted defendant compassionate release if the defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). The court may grant a moving defendant's motion for compassionate release if: (1) the defendant has complied with the statute's administrative exhaustion

---

[2] In his motion, Lilly also requests that his sentence be modified to permit him to serve the remainder of his sentence on home confinement. (DE # 41 at 1.)  Once a sentence is imposed, the BOP is solely responsible for determining an inmate's place of incarceration. *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . ."); *United States v. Richard*, No. 17-30014, 2020 WL 4500670, at *8 (C.D. Ill. Aug. 5, 2020) ("[T]he Court lacks authority to direct the BOP to place the Defendant in home confinement[.]"). While this court lacks authority to direct the BOP to permit Lilly to serve the remainder of his sentence on home confinement, this court could – if warranted – grant Lilly early release from prison pursuant to § 3582(c)(1)(A), and impose an additional term of supervised release that includes a period of home detention.

requirement; (2) "extraordinary and compelling" reasons warrant such a reduction; (3) the court has considered the factors set forth in 18 U.S.C. § 3553(a), as applicable; and (4) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

1. **Exhaustion**

Section 3582(c)(1)(A) requires a defendant to exhaust all remedies with the Bureau of Prisons (BOP) before moving for compassionate release. Specifically, a defendant may file a request for compassionate release with a district court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

The Government and Lilly agree that on May 15, 2020, Lilly sent a request for compassionate release to the warden of his prison, and on May 27, 2020, his request was denied. (*See* DE ## 51-1; 51-2.) Accordingly, Lilly exhausted his administrative remedies under § 3582(c)(1)(A) before filing his motion with this court.

2. **Extraordinary and Compelling Reasons**

The court is only authorized to grant defendant's request if there exists "extraordinary and compelling reasons" justifying his early release. Congress did not define "extraordinary and compelling reasons" in § 3582(c)(1)(A), instead delegating this task to the Sentencing Commission. 28 U.S.C. § 994(t). The Sentencing Commission defines this phrase in the commentary to § 1B1.13 of the United States Sentencing

Guidelines. There, the Sentencing Commission states that an extraordinary and compelling reason warranting a reduction in a term of imprisonment may exist where, as is relevant here: a defendant suffers from a serious physical or medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" or there exists some other extraordinary and compelling reason justifying a reduction in the defendant's term of imprisonment.[3] U.S.S.G. § 1B1.13 cmt. n.1.

The spread of COVID-19 has created unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene, social distancing, and isolation; yet, social distancing can be difficult for individuals living or working in a prison.

FCI Forrest City Low, the prison where Lilly is currently incarcerated, initially had an extensive outbreak of COVID-19 at its facility. The prison houses a total of 1,751 inmates. *See FCI Forrest City Low*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/for/(last visited Sept. 30, 2020). The BOP reports that 652 inmates and 4 staff members at this facility have recovered from COVID-19. *See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Sept. 30, 2020). However, there are

---

[3] The court notes that § 1B1.13 has not been amended to reflect the First Step Act's change to § 3582(c)(1)(A), which now permits a defendant to bring a motion for compassionate release.

4

currently only 2 confirmed inmate cases of COVID-19 and 10 staff cases. *Id.* The BOP reports that there have been no prisoner or staff member deaths caused by the virus at this facility. *Id.*

In his motion, Lilly states that he has asthma and severe allergies. (DE # 41 at 2.) When interviewed by the Probation Office in preparation for his presentence investigation report in 2013, Lilly stated that he suffers from minor asthma. (DE # 20 at ¶ 88.) His mother reported that he outgrew his problem with asthma. (*Id.*) In 2019, Lilly reported to the BOP that he had childhood asthma, but no longer has any symptoms and does not use an inhaler. (DE # 51-3 at 10.) With regards to his claim of severe allergies, according to his BOP medical records, Lilly has allergies to penicillin and shellfish-derived products. (*Id.*)

Lilly claims in his motion that he fears that his medical conditions would place him at greater risk of serious illness were he to contract COVID-19. As it turns out, Lilly was among the 652 prisoners at his facility who were infected with COVID-19 and recovered. His medical records reveal that on June 5, 2020, he was tested for COVID-19 and tested positive, but was asymptomatic. (*Id.* at 2, 7-9.) Lilly's medical records state that he was screened for COVID-19 symptoms on June 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, and 23, and he reported having no symptoms. (*Id.* at 1-2.) After spending 27 days in isolation and testing negative for the virus on June 26, 2020, Lilly was discharged from isolation and his COVID-19 infection was deemed to be "resolved." (*Id.* at 2-3, 13-14.) That same day, this court received Lilly's motion, in which he fails to

5

disclose that he had already contracted the virus.

Lilly claims that he never saw any medical staff on the days that his medical records reflect he was screened for COVID-19 symptoms. (DE # 52 at 4.) He also claims that he was "severely affected" by the virus, and alleges that his asthma and bout of COVID-19 caused lung damage – though he also claims that he has not been seen by medical personnel. (*Id.*) He does not explain why he believes he now has lung damage.

The court finds that the existence of COVID-19 within Lilly's prison, even considered in conjunction with his medical ailments, is not extraordinary and compelling reason that would justify a reduction in his term of imprisonment. It is not yet clear whether reinfection is likely after recovery from COVID-19. *See Clinical Questions about COVID-19: Questions and Answers, Centers for Disease Control and Prevention*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last visited on Sept. 30, 2020) ("The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Patients infected with other betacoronaviruses (MERS-CoV, HCoV-OC43), the genus to which SARS-CoV-2 belongs, are unlikely to be re-infected shortly (e.g., 3 months or more) after they recover. However, more information is needed to know whether similar immune protection will be observed for patients with COVID-19."). However, while there was initially a substantial outbreak of the virus at Lilly's prison, there are currently only 2 confirmed cases among the inmate population, and 10 cases among the members of staff.

Compassionate release is an extraordinary event. *United States v. Pena*, No.

2:15-CR-72-PPS, 2020 WL 3264113, at *1 (N.D. Ind. June 17, 2020). While the court is sympathetic to Lilly's situation and his concern about potentially becoming re-infected with COVID-19 from someone else at the facility, that risk is not an extraordinary and compelling reason justifying his early release, particularly in light of the low number of confirmed cases in the prison. *See United States v. Raia*, 954 F.3 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("[T]he mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release."); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) ("[T]he COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease."). Accordingly, his motion will be denied.

### III. CONCLUSION

For the foregoing reasons, the court **DENIES** defendant's motion for compassionate release under 18 U.S.C. § 3582(c) and Section 603 of the First Step Act (DE # 41).

                                            **SO ORDERED.**

Date: October 5, 2020

                                      s/James T. Moody
                                      JUDGE JAMES T. MOODY
                                      UNITED STATES DISTRICT COURT